## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GRANT TRESSLER,** | ) | **Case No. 3:17-cv-32** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SUMMIT TOWNSHIP,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Before the Court are Defendant Summit Township's Motion for Summary Judgment (ECF No. 66) and Motion to Strike Response in Opposition, Exhibit 4. (ECF No. 77.) These Motions are fully briefed and are ripe for disposition. (*See* ECF Nos. 67-71, 73, 77-78.) For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 66) is **GRANTED IN PART** and **DENIED IN PART** and Defendant's Motion to Strike (ECF No. 77) is **DENIED AS MOOT**.

### I.    Background

#### A.    Procedural History

Plaintiff filed a three-count Complaint against the Township on March 1, 2017. (*See* ECF No. 1.) Plaintiff's Complaint alleged: (1) a violation of the Clean Water Act and Pennsylvania's Clean Streams Law (*id.* ¶¶ 55-59); (2) continuing trespass (*id.* ¶¶ 60-67); and (3) continuing nuisance. (*Id.* ¶¶ 68-76.)

On November 29, 2017, Plaintiff filed an Amended Complaint adding the Commonwealth of Pennsylvania Department of Transportation ("PennDOT") as a defendant.

(*See* ECF No. 26.) The Amended Complaint contained the same three counts—for violation of the Clean Water Act and Pennsylvania's Clean Streams Law, continuing trespass, and continuing nuisance. (*Id.*)

On December 29, 2017, PennDOT filed a Motion to Dismiss. (*See* ECF Nos. 34-36.) In a Memorandum Opinion and Order, the Court granted PennDOT's Motion to Dismiss on sovereign-immunity grounds. (ECF No. 37 at 6-7.) The Court granted Plaintiff leave to file a second amended complaint. (*Id.* at 7-8.)

Plaintiff filed his Second Amended Complaint on March 2, 2018. (ECF No. 38.) His Second Amended Complaint named Leslie S. Richards, in her official capacity as Secretary of PennDOT, as a defendant. (*Id.* ¶ 1.) On September 28, 2018, Plaintiff voluntarily dismissed his claims against Secretary Richards because Plaintiff and Secretary Richards reached a settlement agreement. (ECF No. 64.)

From late 2017 until September of 2018, the parties engaged in discovery. (*See* ECF Nos. 18, 46, 62.) On January 12, 2019, the Township—the only remaining defendant in the case— filed the instant Motion for Summary Judgment. (ECF No. 66.)

**B.     Factual History[1]**

The following facts are undisputed unless otherwise noted.   The Court includes

additional material facts in Section IV where necessary.

Plaintiff Grant Tressler owns property at 7974 Mt. Davis Road in Meyersdale, Summit

Township (the "Township"), Pennsylvania.  (ECF No. 68 ¶ 1.)  Plaintiff's property is bordered

and surrounding as follows:

(1)     The Casselman River borders the east side of Plaintiff's property;

---

[1] The Court derives these facts from a combination of the Township's Concise Statement of Material Facts (ECF No. 68), the Township's Appendix to Motion for Summary Judgment (ECF No. 69), Plaintiff's Responsive Concise Statement of Material Facts (ECF No. 70-1), Plaintiff's Exhibits (ECF Nos. 70-2, 70-3, 70-4, 70-5), and the Township's Response to Plaintiff's Responsive Concise Material Facts (ECF No. 71). Plaintiff did not file a Responsive Concise Statement of Material Facts, as required by the Local Rules of Court of the United States District Court for the Western District of Pennsylvania, *see* LCvR 56.C, https://www.pawd.uscourts.gov/sites/pawd/files/lrmanual20181101.pdf, and the Final Scheduling Order in this case (*see* ECF No. 62 at 4 (demanding "strict compliance" with Local Rule of Court 56.C)). The Court notes that Plaintiff's Responsive Concise Statement of Material Facts purports to "answer the Defendant's factual statement." (ECF No. 70-1 at 1.) Therefore, the Court will attempt to construe the facts in Plaintiff's Responsive Concise Statement of Material Facts as responding to the Township's allegations. But because this is largely not possible, the facts in Defendants' Concise Statement will be deemed admitted unless otherwise noted. *See* LCvR 56.E ("Alleged material facts set forth in the moving party's Concise Statement of Material Facts . . . will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."); (ECF No. 88 at 5 ("All material facts set forth in the Movant's Concise Statement of Undisputed Material Facts shall be deemed admitted for the purpose of summary judgment unless specifically controverted as set forth herein.")); *Wylie v. TransUnion, LLC*, Case No. 3:16-cv-102, 2017 WL 4386404, at *1 (W.D. Pa. Sept. 29, 2017) (Gibson, J.) (concluding that a party's failure to timely file a responsive concise statement of material facts resulted in deemed admissions); *Abed-Rabugh v. Hoobrajh*, Case No. 3:17-cv-15, 2019 WL 343178, at *2 (W.D. Pa. Jan. 28, 2019) (Gibson, J.) (treating facts as undisputed when the non-moving party did not respond to the moving party's statement of material facts); *Wells Fargo Bank, N.A. v. Carnell*, Case No. 3:16-cv-130, 2018 WL 2994393, at *2 n.3 (W.D. Pa. June 14, 2018) (Gibson, J.) (deeming a paragraph in the concise statement of material facts as admitted because the opposing party did not respond to the paragraph); *see also* Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion . . . ."). The parties shall diligently adhere to this Court's Local Rules in the future so as not to drain the Court's limited time and resources. *See, e.g.*, *McGovern v. Correct Care Sols., LLC*, Case No. 3:15-CV-221, 2018 WL 769309, at *1 n.2 (W.D. Pa. Feb. 6, 2018) (Gibson, J.) (explaining the importance of complying with the Local Rules regarding concise statements of material fact).

(2)     An unnamed tributary to the Casselman River borders the south side of Plaintiff's property;

(3)     Mt. Davis Road—a public state highway—borders the west side of Plaintiff's property; and

(4)     Private property borders the north side of Plaintiff's property.

(*Id.* ¶ 2.)

There are four or five private residences on the west side of Mt. Davis Road, across from and upgradient of Plaintiff's property. (*Id.* ¶ 6.) There is a "ditch and culvert" drainage system on the west side of Mt. Davis Road. (*Id.* ¶ 3.) Water enters the ditch-and-culvert system and then flows through pipes underneath Mt. Davis Road and onto Plaintiff's property. (*Id.* ¶ 4.) This case arises from wastewater running from the west side of Mt. Davis Road, through the ditch-and-culvert system, onto Plaintiff's property, and then into the Casselman River.

Plaintiff purchased his property in 2009. (*Id.* ¶ 5.) Plaintiff claims that a test of his well water in March of 2010 revealed a detectable amount of sewage in that water. (*Id.*) The alleged sewage originates from the homes on the west side of Mt. Davis Road discharging their wastewater into the ditch-and-culvert system, thereby polluting the water on Plaintiff's property. (*Id.* ¶ 8.)

Mt. Davis Road is a state highway owned and maintained by PennDOT. (*Id.* ¶¶ 11, 14.) PennDOT is responsible for maintenance and decision-making related to state highways, including the utilization of ditches and drainage facilities. (*Id.* ¶¶ 12-13.) PennDOT constructed the ditch-and-culvert drainage system on the west side of Plaintiff's property. (*Id.* ¶ 20.) The ditch-and-culvert drainage system is located either within a PennDOT right-of-way along Mt. Davis Road or on private property to the north of Plaintiff's property. (*Id.* ¶¶ 16, 19.)

In August of 2015, PennDOT attempted to stop the flow of wastewater onto Plaintiff's property by replacing two cross pipes under Mt. Davis Road. (*Id.* ¶ 22.) During that replacement, PennDOT crushed a separate pipe on Plaintiff's property leaving a "big, open septic tank" in his front yard. (*Id.* ¶ 25.)

On September 25, 2015, the Pennsylvania Department of Environmental Protection ("PADEP") inspected Plaintiff's property. (ECF No. 70-1 ¶ 4; ECF No. 71 ¶ 4.) PADEP inspection reports note that discharge that appeared to be raw sewage that flowed from ditch-and-culvert drainage system on Mt. Davis Road into the Casselman River. (ECF No. 70-1 ¶ 4; ECF No. 71 ¶ 4.) Those reports listed Summit Township as the "Responsible Party." (ECF No. 70-1 ¶ 4; ECF No. 71 ¶ 4.)

PADEP devised a short-term solution to the wastewater problem on Plaintiff's property. (*Id.* ¶ 25.) PADEP directed the Township and PennDOT to add pipe to the ditch system on Mt. Davis Road. (*Id.*) This project was designed to reroute the flow of wastewater until a permanent sewer system was installed. (*Id.* ¶¶ 25-26.) PennDOT and the Township agreed to collaborate on that project. (*Id.* ¶¶ 27-28.)

In October of 2015, PennDOT and the Township attempted to reroute the wastewater away from Plaintiff's property. (*Id.* ¶ 29.) The Township installed 400 feet of pipe across from Plaintiff's property and attempted to seal pipes below Mt. Davis Road using cement. (*Id.*) However, Plaintiff claims that wastewater still enters his property through one of the pipes below Mt. Davis Road. (*Id.* ¶ 31; ECF No. 70-1 ¶ 1; ECF No. 71 ¶ 1.)

In October of 2018, PennDOT plugged one of the pipes underneath Mt. Davis Road as a term of the settlement agreement between Plaintiff and PennDOT's Secretary Richards.[2] (ECF No. 70-1 ¶ 6.)

## II.    Jurisdiction

The Court has jurisdiction over this case under 28 U.S.C. § 1331 because Plaintiff's claim arises under the laws of the United States.  The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

Venue in this district is appropriate under 28 U.S.C. § 1391 because a substantial portion of the events underlying this case occurred in the Western District of Pennsylvania.

## III.    Standard of Review

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving

---

[2] The Township states that it cannot admit or deny this fact because it was unaware of PennDOT's actions or communications between Plaintiff and PennDOT. (ECF No. 71 ¶ 6.)

party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11, (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

## IV. Discussion

For the following reasons, the Township is entitled to summary judgment on part of Plaintiff's first claim for unlawful discharge in violation of the federal Clean Water Act and Pennsylvania's Clean Streams Law. The Township is also entitled to summary judgment on

Plaintiff's state-law tort claims for nuisance and trespass. The Court will separately address these claims.

>    1.    **The Township is Not Entitled to Summary Judgment on Plaintiff's Claim Under the Clean Water Act and Section 201 Pennsylvania Clean Streams Law; But is Entitled to Summary Judgment on Plaintiff's Claim Under Section 401 of the Pennsylvania Clean Streams Law (Count I)**

Count I of Plaintiff's Second Amended Complaint asserts that the Township violated the federal Clean Water Act (CWA) and Pennsylvania Clean Streams Law (CSL) through its unauthorized discharge of raw sewage onto Plaintiff's property. (ECF No. 38 ¶¶ 59-63.) Plaintiff alleges that the Township violated Section 301 of the CWA, Section 201 of the CSL, and Section 401 of the CSL. (*Id.*) The Court will address each of these alleged violations in turn.

>    a.    **Section 301 of the CWA**

"Congress passed the Clean Water Act in 1972 to 'restore and maintain the chemical, physical, and biological integrity of the Nation's waters.'" *PennEnvironment v. PPG Indus., Inc.*, 127 F. Supp. 3d 336, 371 (W.D. Pa. 2015) (quoting *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 602 (2013)). "A central provision of the Act is its requirement that individuals, corporations, and governments secure National Pollutant Discharge Elimination System permits before discharging pollution from any point source into the navigable waters of the United States." *PennEnvironment*, 127 F. Supp. 3d at 371 (quoting *EPA v. Cal. ex rel. State Water Res. Control Bd.*, 426 U.S. 200, 205 (1976)).

Section 301(a) of the CWA provides that, in the absence of a permit, "the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311(a). Under the CWA,

"discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12)(A).

The CWA defines the term "point source" as "any discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." § 1362(14). There is no dispute that the ditch-and-culvert system under Mt. Davis Road is a point source for CWA purposes. (ECF No. 70 at 5.)

The term "addition" is not defined in the CWA. *See Catskill Mts. Chapter of Trout Unlimited v. N.Y.C.*, 273 F.3d 481, 493 (2d Cir. 2001). However, courts have held that "addition" of pollutants to navigable waters implies affirmative conduct. *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1144 (10th Cir. 2005) (citing 40 C.F.R. §§ 122.2, 122.26(b)(14)(iii)); *Friends of Outlet Creek v. Grist Creek Aggregates, LLC*, No. 16-cv-431, 2018 WL 2573139, at *8 (N.D. Cal. Apr. 23, 2018). In *Sierra Club*, the Second Circuit stated that maintenance of a point source is affirmative conduct that can result in liability under the CWA. 421 F.3d at 1144.

The term "pollutant" is defined as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." § 1362(6).

Finally, the term "navigable waters" means "the waters of the United States." § 1362(7). There is no dispute that the Casselman River, into which the wastewater flows in this case, is a navigable water for purposes of the CWA. (ECF No. 67 at 13-15.)

-9-

Plaintiff's CWA claim depends on whether the Township can be held liable for the discharge of pollutants from the ditch-and-culvert system into the Casselman River. Defendant argues that the Township did not discharge pollutants because the sewage at issue originated from the private residences opposite Plaintiff's property on Mt. Davis Road. (ECF No. 67 at 14.) Defendant further argues that the Township cannot be a "discharger" under the CWA because it does not own or maintain the ditch-and-culvert system at issue here. (*Id.* at 15.) Defendant argues that its October 2015 work on the drainage system is irrelevant for CWA purposes because the work was done at PADEP's instruction on PennDOT's property. (*Id.*)

In response, Plaintiff argues that the Township was an "operator" of the point source, and therefore can be held liable under the CWA. (ECF No. 70 at 5.) Specifically, Plaintiff argues that the Township is liable as an operator of the point source because it "exercised sufficient involvement in, and control of, the point source" by maintaining it.[3] (*Id.* at 6 (citing *Resurrection Bay Conservation All. v. City of Seward,* No. 3:06-cv-0224, 2008 WL 508499 (D. Alaska 2008).)

Importantly, ownership of the point source is irrelevant to liability under the CWA. *PennEnvironment,* 127 F. Supp. 3d 336 (citing *Dague v. City of Burlington,* 935 F.2d 1343, 1355 (2d Cir. 1991)). Therefore, the Court is not persuaded by the Township's argument that it is not liable because it does not own the ditch-and-culvert system.

Further, "discharge of pollution" does not require the discharge to originate at the point source. *S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians,* 541 U.S. 95, 104-05 (2004). Here, it

---

[3] Plaintiff cites to *Resurrection Bay Conservation All. v. City of Seward,* No. 3:06-cv-0224, 2008 WL 508499 (D. Alaska 2008) to define the term "operator." (ECF No. 70 at 6.) That case is inapposite because it dealt with a different section of the CWA regarding waste from industrial facilities. *Id.* at *4. In that section of the CWA, the term "operator" is explicitly defined. *See* 33 U.S.C. § 1321(a)(6) (defining "operator" in terms of vessels, offshore facilities, and abandoned offshore facilities). However, the term "operator" is not generally defined in the CWA. *See* 33 U.S.C. § 1362.

is irrelevant that the private residences upgradient from Plaintiff's property, and not the Township itself, generated the complained-of pollution.

Courts within the Third Circuit have not clearly addressed when a discharger is liable under the CWA. However, other courts that have addressed this issue have held that Section 301 of the CWA imposes strict liability. *United States v. Lambert*, 915 F. Supp. 797, 802 (S.D.W.V. 1996) (citing *United States v. Earth Sci., Inc.*, 599 F.2d 368, 374 (10th Cir. 1979); *Sierra Club v. Abston Constr. Co.*, 620 F.2d 41, 46 (5th Cir. 1980)). These courts have found that "Section 301 was written without regard to intentionality, making the person responsible for the discharge of any pollutant strictly liable." *Lambert*, 915 F. Supp. at 802 (quoting *Earth Sci.*, 599 F.2d at 374).

Other decisions have more specifically addressed when someone is "responsible" for discharging pollutants through a point source. In *Jones v. E.R. Snell Contractor, Inc.*, 333 F. Supp. 2d 1344 (N.D. Ga. 2004), the Court held that "the Defendant is a discharger if it had responsibility for, or control over, the performance of work which created a point source for the discharge of pollutants." *Id.* at 1348 (citing *Lambert*, 915 F. Supp. at 802; *United States v. Sargent Cty. Water Res. Dist.*, 876 F. Supp. 1081, 1088 (D. N.D. 1992); *United States v. Bd. of Trustees of Fl. Keys Comm. College*, 531 F. Supp. 267, 274 (S.D. Fla. 1981)). Put differently, "[t]he CWA imposes liability on both the party who actually performed the work [causing the discharge] and on the party with responsibility for or control over the work." *Lambert*, 915 F. Supp. at 802. "[C]ivil liability under the statutes is predicated on either (1) performance, or (2) responsibility for or control over performance of the work, in the absence of a federal permit." *Fl. Keys Comm. College*, 531 F. Supp. at 274.

Courts have also considered whether the defendant knew or should have known that pollutants were discharged into navigable waters. *Dague*, 935 F.2d at 1355 (citing *United States v. Velsicol Chem. Corp.*, 348 F. Supp. 945, 947 (W.D. Tenn. 1976)) ("The court found that the defendant knew or should have known that the city sewers led directly into the Mississippi River and this was sufficient to satisfy the CWA requirements."); *United States v. Gulf Water Park Co., Inc.*, 972 F. Supp. 1056, 1063 (S.D. Miss. 1997) (citing *United States v. Frezzo Bros.*, 461 F. Supp. 266, 270 (E.D. Pa. 1978); *United States v. Ciampitti*, 583 F. Supp. 483 (D. N.J. 1984)).

Here, there is a genuine dispute of material fact as to whether the Township was responsible for performing work that resulted in the discharge of pollution. There is no dispute that the Township maintained the ditch-and-culvert system underneath Mt. Davis Road to some extent. (ECF No. 68 ¶ 27.) The Township admits that "PADEP directed Summit [Township] to install the pipe along the west side of Mt. Davis Road and to close PennDOT's cross pipes running under Mt. Davis Road." (*Id.*) The Township also admits that it "installed approximately 400 feet of perforated pipe near the intersection with Saylor Hill Road across from the [Plaintiff's] Property and closed the cross pipes beneath Mt. Davis Road using cement." (*Id.* ¶ 29.) The Township undertook this work to "eliminate the public health threat to [Plaintiff's] property." (*Id.* ¶ 25.)

Further, a PADEP general inspection report indicates that the Township was responsible for the ditch-and-culvert system. (ECF No. 70-3.) The report was generated in response to complaints about raw sewage being discharged onto Plaintiff's property and into the Casselman River. (*Id.* at 1.) The report lists the Summit Township as the "responsible party." (*Id.* at 2.)

This indicates that the Township exercised control over and responsibility for the ditch-and-culvert system.

And finally, there is a dispute as to whether the Township knew or should have known of the discharge of pollutants. *Dague*, 935 F.2d at 1355. Plaintiff testified that his well water tested positive for sewage. (ECF No. 68 ¶¶ 4-5.) He maintains that he reached out to the Township in an attempt to resolve the situation. (ECF No. 70-1 ¶¶ 2-3.) And the Township was aware that the PADEP considered the situation a "public health threat to [Plaintiff's] property." (ECF No. 68 ¶ 25.)

It is not relevant that the Township performed work on the ditch-and-culvert system at the direction of PADEP or PennDOT. A party cannot escape liability under the CWA when it acts at the direction of another party. *See, e.g., Lambert*, 915 F. Supp. at 802; *Fl. Keys Comm. College*, 531 F. Supp. at 274 (holding that liability under the CWA extends to both the party who performs work and the party who delegates work for another party to perform). Here, the Township acknowledges that "PADEP directed Summit and PennDOT to complete the work" and that "PADEP directed Summit [Township] to work with PennDOT." (ECF No. 68 ¶¶ 26-28.) Thus, the Township is not entitled to summary judgment because it worked at the direction of the PADEP and PennDOT.

In conclusion, there is a genuine dispute of material fact as to whether the Township was responsible for the point source here—the ditch-and-culvert system under Mt. Davis Road. There is no dispute that the Township affirmatively performed work on the ditch-and-culvert system by filling existing pipes and installing new pipe. It follows that the Township exercised some degree of control over and responsibility for maintaining the point source—it undertook

work to prevent the discharge of pollutants. At the summary judgment stage, the Court must infer that through its work on the ditch-and-culvert system, the Township was responsible for the discharge of pollutants through that point source and into the Casselman River.

Accordingly, the Township is not entitled to summary judgment on Plaintiff's claim under Section 301 of the CWA.

### b. Section 201 of the CSL

Section 201 of the CSL provides that "[n]o person or municipality shall place or permit to be placed, or discharge or permit to flow, or continue to discharge or permit to flow, into any of the waters of the Commonwealth any sewage." 35 PA. CONS. STAT. § 691.201.

The parties do not dispute that the Township did not actively place or discharge sewage through the ditch-and-culvert system, where it then flowed onto Plaintiff's property and eventually into the Casselman River. (ECF No. 68 ¶¶ 7-9.) Rather, it is undisputed that the sewage in issue was generated by the homes on Mt. Davis Road opposite Plaintiff's property. (*Id.* ¶¶ 7-8.) Therefore, the Township's liability under Section 201 of the CSL is dependent on the Court's interpretation of that section of the CSL. The Township can only be held liable if the Court determines that Section 201 has a passive connotation, thereby applying to municipalities who fail to prevent discharges.

As the Township points out, the CSL does not define the term "discharge." (ECF No. 67 at 16.) And it does not appear that any Pennsylvania or federal decisions have interpreted the meaning of the word discharge in the CSL.

However, our decision in this case does not hinge only upon the definition of discharge. Rather, the key issue is whether Section 201 applies to inaction, and not just the active discharge

-14-

of sewage into waterways. The plain language of the statute is instructive on this point. *See Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429, 476 (W.D. Pa. 2008) (Gibson, J.) ("The Court must begin its analysis with the plain language of the statute.").

Section 201 not only makes it unlawful for a municipality to "place" sewage into Commonwealth waterways. It also makes it unlawful for a municipality to "permit [sewage] to be placed" into Commonwealth waterways. 35 PA. CONS. STAT. § 691.201. Similarly, Section 201 not only makes it unlawful to "discharge" sewage into Commonwealth waterways, but also makes it unlawful to "permit [sewage] to flow" into Commonwealth waterways. *Id.*

The Court finds that the Pennsylvania General Assembly included the passive phrases "permit to be placed" and "permit to flow" to broaden the statute so that it applies to both active and passive conduct. The natural reading of Section 201 is that it applies not only to the affirmative placement and discharge of sewage into Commonwealth waterways, but that it also applies to inaction that results in pollution. The third clause of the statute—that "no municipality shall . . . continue to discharge or permit to flow"—also utilizes passive language, which further indicates that a municipality violates Section 201 when it fails to prevent the pollution of Commonwealth waterways.

This interpretation is consistent with the rule against surplusage. "The rule against surplusage instructs the court to interpret a statute such that each word has meaning; nothing is redundant, inoperative, void, or superfluous."[4] *Bohner v. Burwell*, No. 15-4088, 2016 WL

---

[4] The Court recognizes that the rule against surplusage "is not absolute." *Tima v. United States Attorney Gen.*, 903 F.3d 272, 278 (3d Cir. 2018) (quoting *Lamie v. United States Trustee*, 540 U.S. 526, 536 (2004)). The Supreme Court has held that the rule against surplusage should not be applied whenever there are two ways to read a statute. *Lamie*, 540 U.S. at 536. However, here, the Court finds that it is appropriate to

-15-

8716339, at *6 (E.D. Pa. Dec. 2, 2016) (citing *Corley v. United States*, 556 U.S. 303, 314 (2009)).

Here, the phrases "permit to be placed," "permit to flow," and "continue to discharge or permit

to flow" would be rendered meaningless if the Court were to find that Section 201 did not apply

to passive conduct and failures to stop pollution. This supports the Court's broad interpretation

of Section 201.

This interpretation is also consistent with the aims of Pennsylvania's Clear Streams Law.

The Pennsylvania General Assembly enacted the Clean Streams Law to ensure that streams are

clean and unpolluted because "[c]lean, unpolluted streams are absolutely essential if

Pennsylvania is to attract new manufacturing industries and to develop Pennsylvania's full

share of the tourism industry." 35 PA. CONS. STAT. § 691.4(1); *see also Pa. v. Barnes & Tucker Co.*,

371 A.2d 461, 465 (Pa. 1977) ("The objective of The Clean Streams Law, as amended, is to

prevent further discharge of pollution into the waters of the Commonwealth and not simply the

cessation of future activities which are responsible for the creation of the polluting condition.").

Finally, this broad interpretation of Section 201 is consistent with an instructive recent

decision by the Supreme Court of Pennsylvania. In *EQT Prod. Co. v. Pa. Dep't of Environ. Prot.*,

181 A.3d 1128 (Pa. 2018), the Supreme Court of Pennsylvania interpreted Section 301 of the CSL,

which applies to pollution from industrial waste. *Id.* at 1145-46. Section 301—which is nearly

identical to Section 201—provides that "[n]o person or municipality shall place or permit to be

placed, or discharge or permit to flow, or continue to discharge or permit to flow, into any of

the waters of the Commonwealth any industrial wastes, except as hereinafter provided by this

---

apply the rule against surplusage because Section 210 of the CSL is only reasonably susceptible to one
interpretation.

act." 35 PA. CONS. STAT. § 691.301. In *EQT*, the court found that "the operative terms within [Section 301] may be read to carry passive connotations." 181 A.3d at 1146. The court further found that "the Legislature used broad terms and phrases to prohibit the unauthorized release of industrial waste into any waters of the Commonwealth." *Id.* The Court here reaches the same conclusion in concluding that Section 201 applies to both active and passive conduct.

The jury must determine if the Township violated Section 201 of the CSL because several factual disputes underlie that question. First, there is a genuine dispute as to whether sewage was discharged through the ditch-and-culvert system, onto Plaintiff's property, and then into the Casselman River. (ECF No. 68 ¶¶ 4, 8; ECF No. 70-1 ¶ 1; ECF No. 71 ¶ 1.) The Township disputes whether raw sewage was discharged onto Plaintiff's property, and eventually into the Casselman River. (ECF No. 71 ¶ 4.) There is also a genuine dispute of material fact as to the Township's responsibilities here—namely, whether it failed to prevent the discharge of sewage into the Casselman River. (ECF No. 68 ¶¶ 25-33; ECF No. 71 ¶ 4.) A reasonable jury could conclude that the Township failed to abate the flow of sewage into the Casselman River, despite its legal obligation to prevent pollution under Section 201. Accordingly, the Township is not entitled to summary judgment on Plaintiff's claim under Section 201 of the CSL.

### c.  Section 401 of the CSL

Section 401 of the CSL provides that:

[i]t shall be unlawful for any person or municipality to place into any of the waters of the Commonwealth, or allow or permit to be discharged from property owned or occupied by such person or municipality into any of the waters of the Commonwealth, any substance of any kind or character resulting in pollution as herein defined.

-17-

35 PA. CONS. STAT. § 691.401.

Plaintiff's claim under Section 401 of the CSL clearly fails. As previously discussed, there is no genuine dispute that the Township does not own Mt. Davis Road or the property alongside it. (ECF No. 68 ¶¶ 13-14, 16-18, 19-24.) Rather, it is undisputed that PennDOT owns Mt. Davis Road and the land alongside it. (*Id.*) The other land surrounding Plaintiff's land is private property. (*Id.* ¶ 19.)

Moreover, the Township did not occupy land from which pollution was discharged. The CSL does not define the word "occupy." According Black's Law Dictionary, to occupy is "[t]o seize or take possession of." *Occupy*, BLACK'S LAW DICTIONARY (10th Ed. 2014). The only decision interpreting the term determined that owners of easements "occupied" land for CSL purposes. *Diess v. PennDOT*, 935 A.2d 895, 911 (Pa. Commw. Ct. 2007); *W. Pa. Water Co. v. Pa. Dep't of Envtl. Res*, 560 A.2d 905, 907 (Pa. Commw. Ct. 1989).

Here, there is no evidence that the Township owned an easement on or near Mt. Davis Road. And there is no other indication that the Township seized or took possession of Mt. Davis Road or other land surrounding Plaintiff's property. (ECF No. 68 ¶¶ 29-30.) While the Township installed pipe near Plaintiff's property in October of 2015, both the Township and PennDOT acknowledged that the Township was undertaking a temporary project on PennDOT's land and right-of-way. (*Id.* ¶ 30.) There is no indication that the Township occupied Mt. Davis Road or the surrounding land through its work on this project.

In conclusion, there is no dispute that the Township did not discharge pollution "from any property owned or occupied" by it. Accordingly, the Township is entitled to summary judgment on Plaintiff's unlawful-discharge claim under Section 401 of the CSL.

2. **The Township is Entitled to Summary Judgment on Plaintiff's Nuisance and Trespass Claims (Counts II and III) Because the Township is Immune from Suit Under the Pennsylvania's Political Subdivision Tort Claims Act**

The Township argues that it is entitled to summary judgment on Plaintiff's state law tort claims—for nuisance and trespass—because it is immune under Pennsylvania's Subdivision Tort Claims Act (PSTCA). (ECF No. 67 at 6-10.) Plaintiff does not argue against the Township's immunity. (*See* ECF No. 70 at 8-9.)

The PSTCA provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 PA. CONS. STAT. § 8541. Townships are "local agencies" for PSTCA purposes. *See, e.g., Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 368 (E.D. Pa. 2002). "Tort immunity is a non-waivable, absolute defense." *Cromo v. SSC Coraopolis Operating Co., LP*, No. 17-1625, 2018 WL 4403522, at *4 (W.D. Pa. Apr. 17, 2018) (citing *In re Upset Sale of Prop's.*, 560 A.2d 1388, 1389 (Pa. 1989)).

To defeat PSTCA immunity, a plaintiff must show: (1) that damages would be recoverable under common law or a statute if the injury were caused by a person without immunity; (2) that the injury was caused by the negligent act of a government employee in the scope of his duties; and (3) that one of the statutory exceptions to PSTCA immunity applies. 42 PA. CONS. STAT. § 8542; *Thompson v. Wagner*, 631 F. Supp. 2d 664, 687-88 (W.D. Pa. 2008) (Gibson, J.).

None of the statutory exceptions to PSTCA immunity apply in this case.[5] Plaintiff does not argue otherwise. The statutory exception most on point here "utility service facilities" exception, which provides that:

[a] dangerous condition of the facilities of steam, sewer, water, gas or electric systems *owned by the local agency* and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 PA. CONS. STAT. § 8542(b)(5) (emphasis added).

"Because of the clear intent [of PSTCA] to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed." *Lockwood v. City of Pittsburgh*, 751 A.2d 1136, 1139 (Pa. 2000).

Here, the utility service facilities exception does not apply because the Township does not own the drainage systems that divert wastewater onto Plaintiff's property. It is undisputed that PennDOT owns Mt. Davis Road. (ECF No. 68 ¶¶ 10-11.) It is also undisputed that PennDOT owns the ditch-and-culvert drainage system on Mt. Davis Road. (*Id.* ¶¶ 12-17.) PennDOT, and not the Township, has right-of-ways alongside Mt. Davis Road. (*Id.* ¶ 19.) All other areas along Mt. Davis Road are private property. (*Id.*) Plaintiff has not created a factual

---

[5] Section 8542(b) enumerates eight general categories of "negligent acts" for which a local agency can be held liable. The categories are: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of animals. 42 Pa. Cons. Stat. § 8542(b); *Thompson v. Wagner*, 631 F. Supp. 2d 664, 668 (W.D. Pa. 2008) (Gibson, J.).

dispute about the ownership of the Mt. Davis Road or the drainage systems beside it. (*See* ECF No. 70-1.) Therefore, the Township is entitled to immunity under PSTCA.

In other cases, courts have found that municipalities are entitled to immunity under PSTCA when they do not own the sewer systems in question. *Leggieri v. Haverford Twp.*, 511 A.2d 955, 957 (Pa. Commw. Ct. 1986) (holding that township was immune from trespass claim where wastewater flowed onto plaintiff's property from adjacent home, even though township had approved wastewater-drainage system); *Envtl. Air, Inc. v. Wheeling & Lake Ry. Co.*, No. 11-1043, 2012 WL 27471, at *3 (W.D. Pa. Jan. 3, 2012) (holding that utility services exception did not apply, and therefore that municipality was immune, where plaintiff failed to establish that defendant owned the sewer system).

In sum, there is no genuine dispute of material fact that the Township did not own the drainage facilities surrounding Plaintiff's property, which entitles the Township to immunity on Plaintiff's state-law tort claims. Accordingly, the Township is entitled to summary judgment on Plaintiff's trespass and nuisance claims.

### 3. The Court Will Deny Defendant's Motion to Strike as Moot

The Township filed a Motion to Strike Exhibit 4 Attached to Plaintiff Grant Tressler's Response in Opposition to Motion for Summary Judgment. (ECF No. 72.) Exhibit 4 to Plaintiff's response is an email from a federal Environmental Protection Agency employee to other federal government employees. (*See* ECF No. 70-5 at 1.) In the email, the sender details the "wildcat sewer"—the term for a wastewater disposal system in an area with no sewage or sewage-treatment program—near Plaintiff's property and the Casselman River. (*Id.* at 1-3.) The

sender discusses remedial action to alleviate the flow of sewage across Plaintiff's property and into the Casselman River. (*Id.* at 2-3.)

In support of its Motion to Strike, the Township argues that Exhibit 4 of Plaintiff's response to the Township's Motion for Summary Judgment must be stricken because it is not properly authenticated and contains inadmissible hearsay. (ECF No. 73 at 3-4.)

In reaching its decision on the Township's Motion for Summary Judgment, the Court did not rely on Exhibit 4 of Plaintiff's response. Therefore, the Court will not reach the evidentiary issues raised in the Township's Motion to Strike and will deny its Motion to Strike as moot.

## V. Conclusion

For the foregoing reasons, the Township's Motion for Summary Judgment (ECF No. 66) is **GRANTED IN PART** and **DENIED IN PART**. The Township is entitled to summary judgment on Plaintiff's state-law tort claims for nuisance and trespass (Counts II and III) and Plaintiff's claim under Section 401 of the Pennsylvania Clean Streams Law. The Township is not entitled to summary judgment on Plaintiff's claims under Section 301 of the Clean Water Act and Section 201 of the Pennsylvania Clean Streams Law. Further, the Township's Motion to Strike (ECF No. 72) is **DENIED AS MOOT**.

A corresponding order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GRANT TRESSLER,            )       **Case No. 3:17-cv-32**

         )

      **Plaintiff,**        )       **JUDGE KIM R. GIBSON**

         )

    **v.**              )

         )

SUMMIT TOWNSHIP,       )

         )

      **Defendant.**      )

## ORDER

**AND NOW,** this _29th_ day of April, 2019, upon consideration of Defendant's Motion for Summary Judgment (ECF No. 66) and Defendant's Motion to Strike Response in Opposition, Exhibit 4 (ECF No. 72), **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. The Township is entitled to summary judgment on Plaintiff's state-law tort claims for nuisance and trespass (Counts II and III).

With respect to Count I, Defendant is entitled to summary judgment on Plaintiff's claim under Section 401 of the Pennsylvania Clean Streams Law. The Township is not entitled to summary judgment on Plaintiff's claims under Section 301 of the Clean Water Act and Section 201 of the Pennsylvania Clean Streams Law.

**IT IS FURTHER ORDERED** that the Township's Motion to Strike (ECF No. 72) is **DENIED AS MOOT**.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**